Slip Op. 12- 2

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| NEW HAMPSHIRE BALL BEARING, INC., | |
| Plaintiff, | |
| v. | |
| UNITED STATES, UNITED STATES CUSTOMS AND BORDER PROTECTION, and UNITED STATES INTERNATIONAL TRADE COMMISSION, | Before: Gregory W. Carman, Judge<br>Timothy C. Stanceu, Judge<br>Leo M. Gordon, Judge |
| Defendants, | Court No. 08-00398 |
| and | |
| THE TIMKEN COMPANY and MPB CORPORATION, | |
| Defendant-Intervenors. | |

## OPINION

[Dismissing the action for failure to state a claim upon which relief can be granted]

Dated: January 3, 2012

*Frank H. Morgan*, White & Case, LLP, of Washington, DC, for Plaintiff.

*David S. Silverbrand*, and *Courtney S. McNamara*, Trial Attorneys, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for Defendant United States Customs and Border Protection. With them on the briefs were *Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director, *Franklin E. White, Jr.*, Assistant Director.

*Patrick V. Gallagher, Jr.*, Attorney Advisor, Office of the General Counsel, U.S. International Trade Commission, of Washington, DC, for Defendant U.S. International Trade Commission. With him on the briefs were *James M. Lyons*, General Counsel, and *Neal J. Reynolds*, Assistant General Counsel.

*Geert De Prest*, Stewart and Stewart, of Washington, DC, for defendant-intervenors. With him on the briefs were *Terrence P. Stewart, Amy S. Dwyer,* and *Patrick J. McDonough*.

CARMAN, JUDGE: Plaintiff New Hampshire Ball Bearing, Inc. ("NHBB") challenges the constitutionality of the Continued Dumping and Subsidy Offset Act of 2000[1] ("CDSOA" or "Byrd Amendment") and the administration of the statute by Defendants.  Plaintiff claims that it unlawfully was denied "affected domestic producer" ("ADP") status, which would have qualified it to receive distributions under the CDSOA.  The case is now before the court on dispositive motions.  Defendants United States Customs and Border Protection ("Customs" or "CBP") and the United States International Trade Commission (the "ITC") each moved pursuant to USCIT Rule 12(b)(5) to dismiss Plaintiff's complaint for failure to state a claim upon which relief can be granted.  (Def.'s, United States Customs and Border Protection's Mot. To Dismiss ("CBP Mot."), ECF No. 47); (Def. United States International Trade Commission's Mot. to Dismiss ("ITC Mot."), ECF No. 46).  Defendant-Intervenors Timken Company and MBP Corp. (collectively, "Timken") moved under USCIT Rule 12(c) for judgment on the pleadings. (Timken's Mot. For J. on the Pleadings ("Timken Mot."), ECF No. 49).  For the reasons set forth below, this action will be dismissed for failure to state a claim upon which relief can be granted.

## BACKGROUND

Plaintiff, a U.S. producer of ball bearings and spherical plain bearings, participated in a 1988 investigation conducted by the ITC that culminated in the issuance of antidumping duty orders on ball bearings and spherical plain bearings from Germany, France, Italy, Japan,

---

[1] Pub. L. No. 106-387, §§ 1001-03, 114 Stat. 1549, 1549A-72-75 (codified at 19 U.S.C. § 1675c (2000)), repealed by Deficit Reduction Act of 2005, Pub. L. 109-171, § 7601(a), 120 Stat. 4, 154 (Feb. 8, 2006, effective Oct. 1, 2007).

Singapore, Sweden, and the United Kingdom.  (First Am. Compl. ¶¶ 1, 8 (Feb. 11, 2011), ECF

No. 27); Antidumping Duty Orders: Ball Bearings,, . . . , 54 Fed. Reg. 20,900, 20,900-20,910

(May 15, 1989).  During those proceedings, NHBB responded to the ITC's questionnaires but

declined to indicate to the ITC that it supported the antidumping petition.  (First Am. Compl.

¶ 8).  Consequently, the ITC has never included NHBB on a published list of ADPs, and, as a

result, NHBB has never received a CDSOA distribution from CBP.  (Id. ¶ 18).

    Plaintiff brought this case in November 2008 to challenge the government's refusal to

provide it CDSOA distributions for fiscal years 2006 through 2008.  (Compl. ¶ 26 (Nov. 13,

2008), ECF No. 4).  Shortly thereafter, the court stayed this action pending a final resolution of

other litigation raising the same or similar issues.[2]  Following the decision of the U.S. Court of

Appeals for the Federal Circuit ("Court of Appeals") in SKF USA Inc. v. United States, 556 F.3d

1337 (2009) ("SKF USA II"), the court ordered Plaintiff to show cause why this action should

not be dismissed.  (Order (Jan. 3, 2011), ECF No. 21).  After Plaintiff responded to the court's

order, the court lifted its stay on this action for all purposes.  (Order (Feb. 9, 2011), ECF No. 25);

(Pl. NHBB's Resp. to the Court's Jan. 3, 2011 Order to Show Cause (Feb. 1, 2011), ECF

No. 22).[3]  Plaintiff filed a notice of an amended complaint under USCIT Rule 15(a) on

February 11, 2011 (Notice of First Am. Compl., First Am. Compl., ECF No. 27), and on the

same day Timken filed an unopposed moved to intervene and answer (Unopposed Mot. to

---

[2] The court's order stayed the action "until final resolution of Pat Huval Restaurant & Oyster Bar, Inc. v. United States, Consol. Ct. No. 06-0290, that is, when all appeals have been exhausted."  Order (Dec. 24, 2008), ECF No. 15.

[3] CBP has not made any CDSOA distributions affecting this case and indicates that it will refrain from doing so until January 31, 2012 at the earliest.  (Def. U.S. Customs & Border Protection's Resp. to the Ct.'s Feb. 14, 2011 Request (Feb. 28, 2011), ECF No. 36).

Intervene, Answer of the Timken Co. and MPB Corp., ECF No. 28).  The instant motions to

dismiss and motion for judgment on the pleadings were filed on May 2, 2011.  (ITC Mot., ECF

No. 46; CBP Mot., ECF No. 47; Timken Mot., ECF No. 49)[4].

## JURISDICTION

The court exercises subject matter jurisdiction over this action pursuant to section 201 of

the Customs Courts Act of 1980, 28 U.S.C. § 1581(i)(4), which grants the Court of International

Trade exclusive jurisdiction of any civil action commenced against the United States that arises

out of any law providing for administration and enforcement with respect to, inter alia, the

matters referred to in § 1581(i)(2), which are "tariffs, duties, fees, or other taxes on the

importation of merchandise for reasons other than the raising of revenue."  The CDSOA, under

which this action arises, is such a law.  See Furniture Brands Int'l, Inc. v. United States, 35 CIT

__, Ct. No. 07-00026, Slip Op. 11-132 at 9-15.

## DISCUSSION

The CDSOA amended the Tariff Act of 1930 to provide for an annual distribution (a

"continuing dumping and subsidy offset") of duties assessed pursuant to an antidumping duty or

countervailing duty order to affected domestic producers as reimbursements for qualifying

expenditures.[5]  19 U.S.C. § 1675c(a)-(d).  ADP status is limited to petitioners, and interested

---

[4] Defendant-intervenors' motion under USCIT Rule 12(c) for judgment on the pleadings
was filed without answers having been filed by the government defendants.  (Timken's Mot. For
J. on the Pleadings, ECF No. 49).  Defendant-intervenors filed an answer on February 11, 2011
(Answer of the Timken Co. and MPB Corp., ECF No. 28 ("Timken's Answer")) and an amended
answer on March 4, 2011 (Am. Answer of the Timken Co. And MPB Corp., ECF No. 40
("Timken's Amended Answer").

[5] Congress repealed the CDSOA in 2006, but the repealing legislation provided that "[a]ll
(continued...)

parties in support of petitions, with respect to which antidumping duty and countervailing duty

orders are entered, and who remain in operation.  Id. § 1675c(b)(1).  The CDSOA directed the

ITC to forward to Customs, within sixty days after an antidumping or countervailing duty order

is issued, lists of persons with ADP status, i.e., "petitioners and persons with respect to each

order and finding and a list of persons that indicate support of the petition by letter or through

questionnaire response."  Id. § 1675c(d)(1).  The CDSOA also provided for distributions of

antidumping and countervailing duties assessed pursuant to existing antidumping duty and

countervailing duty orders and for this purpose directed the ITC to forward to CBP a list

identifying ADPs "within 60 days after the effective date of this section in the case of orders or

findings in effect on January 1, 1999 or thereafter . . . ."  Id.  The CDSOA directed CBP to

publish in the Federal Register, prior to each distribution, lists of ADPs potentially eligible for

distributions based on the lists obtained from the ITC, id. § 1675c(d)(2), and to distribute

annually all funds, including accrued interest, from antidumping and countervailing duties

received in the preceding fiscal year.  Id. § 1675c(d)(3), (e).

    After this case was brought, the Court of Appeals, in SKF USA II, upheld the CDSOA

against constitutional challenges brought on First Amendment and equal protection grounds.

556 F.3d at 1360 ("[T]he Byrd Amendment is within the constitutional power of Congress to

---

[5](...continued)
duties on entries of goods made and filed before October 1, 2007, that would [but for the
legislation repealing the CDSOA], be distributed under [the CDSOA] . . . shall be distributed as
if [the CDSOA] . . . had not been repealed . . . ."  Deficit Reduction Act of 2005, Pub. L. No.
109-171, § 7601(b), 120 Stat. 4, 154 (2006).  In 2010, Congress further limited CDSOA
distributions by prohibiting payments with respect to entries of goods that as of December 8,
2010 were "(1) unliquidated; and (2)(A) not in litigation; or (B) not under an order of liquidation
from the Department of Commerce."  Claims Resolution Act of 2010, Pub. L. No. 111-291,
§ 822, 124 Stat. 3064, 3163 (2010).

enact, furthers the government's substantial interest in enforcing the trade laws, and is not overly

broad.  We hold that the Byrd Amendment is valid under the First Amendment."); id. ("Because

it serves a substantial government interest, the Byrd Amendment is also clearly not violative of

equal protection under the rational basis standard.").[6]

        We address below the four claims that are stated in Plaintiff's First Amended Complaint.[7]

In Claims one and two, Plaintiff challenges the "in support of the petition" requirement of the

CDSOA ("petition support requirement"), both facially and as applied to NHBB, on

constitutional First Amendment (First Am. Compl. ¶¶ 20-22 ) and Fifth Amendment equal

protection grounds (Id. ¶¶ 23-25).  In Claim three, Plaintiff claims that the petition support

requirement violates the Fifth Amendment due process clause, both facially and as applied, in

basing NHBB's eligibility for disbursements on past conduct, i.e., support for a petition.  (Id. ¶¶

---

        [6] SKF USA Inc. v. United States, 556 F.3d 1337 (2009) ("SKF USA II") reversed the
decision of the Court of International Trade in SKF USA Inc. v. United States, 20 CIT 1433, 451
F. Supp. 2d 1355 (2006) ("SKF USA I"), which held the petition support requirement of the
CDSOA unconstitutional on Fifth Amendment equal protection grounds.

        [7] In filing its notice of an amended complaint on February 11, 2011, Plaintiff asserted a
right to amend as of course because "a responsive pleading has not yet been served."  (Notice of
First Am. Compl., ECF. No. 27).  However, a December 7, 2010 amendment to the Rules of this
Court, effective as of January 1, 2011, altered the rules for amending pleadings as a matter of
course.  As amended, USCIT Rule 15(a) provides that one amendment to a pleading may be
made as a matter of course: "within: (A) 21 days after serving [the pleading], or (B) if the
pleading is one to which a responsive pleading is required, 21 days after service of a responsive
pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."
(USCIT R. 15(a)).  We consider it appropriate to apply the amended Rule 15(a) to Plaintiff's
February 11, 2011 notice of an amended complaint.  Doing so is not infeasible and would not
work an injustice.  See USCIT R. 89.  Applying the amended rule, we consider the First
Amended Complaint to be before us, noting that Plaintiff filed its notice of an amended
complaint on the same day that Timken Company and MBP Corp. served its answer.  (See Notice
of First Am. Compl.; Unopposed Mot. to Intervene, Timken's Answer, ECF No. 28.)

26-28).  Finally, Plaintiff claims that Defendants' actions violate the Administrative Procedure

Act, 5 U.S.C. §§ 701-706 ("APA") (Id. ¶¶ 29-31).

**I.      Plaintiff's Facial and As Applied Challenges under the First Amendment and the Equal Protection Clause Are Foreclosed by Binding Precedent**

Plaintiff's claims facially challenging the constitutionality of the CDSOA's petition

support requirement under the First Amendment (First Am. Compl. ¶¶ 20-22) and the Due

Process clause of the Fifth Amendment (Id. ¶¶ 23-25) are precluded by the holding in SKF

USA II.  A claim that a statute is facially unconstitutional is rebutted by even a single

constitutional application of the statute.  See Wash. State Grange v. Wash. State Republican

Party, 552 U.S. 442, 449 (2008) (citing United States v. Salerno, 481 U.S. 739, 475 (1987)) ("a

Plaintiff can only succeed in a facial challenge by 'establish[ing] that no set of circumstances

exists under which the Act would be valid,' i.e., that the law is unconstitutional in all of its

applications.").  In SKF USA II, the Court of Appeals held that the CDSOA did not violate

constitutional First Amendment or equal protection principles as applied to Plaintiff SKF USA,

Inc. ("SKF").  This ruling forecloses any possibility that the statute is facially unconstitutional on

the First Amendment and Equal Protection grounds asserted by SKF in SKF USA II.  Plaintiff's

claims to the same effect therefore must be dismissed pursuant to USCIT Rule 12(b)(5) for

failure to state a claim upon which relief can be granted.

Plaintiff fails to plead facts allowing the court to conclude that the as-applied First

Amendment and equal protection challenges to the CDSOA are distinguishable from claims

brought, and rejected, in SKF USA II.  The Complaint contains no assertions that the CDSOA

was applied to NHBB in a different manner than the statute was applied to other parties who did

not support a petition.  NHBB "participated in the underlying ITC investigation . . . and was

included within the domestic industry."  (First Am. Compl. ¶ 8).  NHBB filled out an ITC

questionnaire but did not support the petition.  (Id.).  The facts as pled place Plaintiff on the same

footing as other potential claimants who did not support the petition, such as SKF.  See SKF

USA II, 556 F.3d at 1343 ("Since it was a domestic producer, SKF also responded to the ITC's

questionnaire, but stated that it opposed the antidumping petition.").  Consequently, Plaintiff's

as-applied First Amendment and equal protection challenges are also foreclosed by the holding in

SKF USA II and must be dismissed pursuant to USCIT Rule 12(b)(5) for failure to state a claim

upon which relief can be granted.

**II.      The Petition Support Requirement Does Not Violate the Due Process Clause Due to
            Retroactivity**

        Plaintiff claims that the petition support requirement "violates the Due Process Clause of

the United States Constitution, both facially and as applied to NHBB, because it impermissibly

bases NHBB's eligibility for disbursements on past conduct" and because "[t]he Due Process

Clause disfavors retroactive legislation."  (First Am. Compl. ¶ 27).  We do not find merit in this

claim.

        The CDSOA's petition support requirement has a retroactive aspect in that it conditions

the receipt of distributions on support decisions including support decisions that were made

before the statute was passed.  See Landgraf v. USI Film Prods., 511 U.S. 244, 270 (a retroactive

statute attaches "new legal consequences to events completed before its enactment.").  Plaintiff

objects on constitutionality grounds to the retroactive reach of the CDSOA.  According to the

facts stated in the complaint, NHBB was denied ADP status and distributions because of its

decision, made nearly twelve years before the enactment of the CDSOA, not to support the

petition in the ball bearing antidumping investigation.  (First Am. Compl. ¶¶ 16-18).

      A statute that benefits or prejudices competing interests according to pre-enactment

conduct is not, on that basis alone, violative of constitutionally-protected due process rights.  In

addressing generally the subject of due process challenges to retrospective legislation, the

Supreme Court summarized an established principle, stating that "[i]t is by now well established

that legislative Acts adjusting the burdens and benefits of economic life come to the Court with a

presumption of constitutionality, and that the burden is on one complaining of a due process

violation to establish that the legislature has acted in an arbitrary and irrational way."  Usery v.

Turner Elkhorn Mining Co., 428 U.S. 1, 15 (1976) (citations omitted).  The Supreme Court

further instructed in Turner Elkhorn that "our cases are clear that legislation readjusting rights

and burdens is not unlawful solely because it upsets otherwise settled expectations."  Id. at 16

(citations omitted).

      Later referring to its decision in Turner Elkhorn, the Supreme Court stated that "the

strong deference accorded legislation in the field of national economic policy is no less

applicable when that legislation is applied retroactively."  Pension Benefit Guaranty Corp. v.

R.A. Gray & Co., 467 U.S. 717, 729 (1984).  The Supreme Court added that "[t]o be sure, we

went on to recognize [in Turner Elkhorn] that retroactive legislation does have to meet a burden

not faced by legislation that has only future effects" and that, as to due process, this "burden is

met simply by showing that the retroactive application of the legislation is itself justified by a

rational legislative purpose."  Id. at 730.  Pension Benefit further explained that "[p]rovided that

the retroactive application of a statute is supported by a legitimate legislative purpose furthered

by rational means, judgments about the wisdom of such legislation remain within the exclusive

province of the legislative and executive branches." Id. at 729 (quotation omitted).

In Turner Elkhorn, the Supreme Court upheld an act of Congress requiring that a coal

mine operator provide compensation for a former employee's death or disability due to

pneumoconiosis (black lung disease) "arising out of employment in its mines, even if the former

employee terminated his employment in its mines before the act was passed." Turner Elkhorn,

428 U.S. at 20. The Supreme Court reasoned that "the imposition of liability for the effects of

disabilities bred in the past is justified as a rational measure to spread the costs of the employees'

disabilities to those who have profited from the fruits of their labor  the operators and the coal

consumers." Id. at 18.

In Pension Benefit, 467 U.S. at 730-31, the Supreme Court found no constitutional due

process infirmity in a September 26, 1980 enactment of an amendment to the Employee

Retirement Income Security Act (ERISA) that required an employer withdrawing from a

multiemployer pension plan to pay a fixed sum to the pension plan if the employer withdrew

from the plan on or after April 29, 1980. The Supreme Court concluded that it was "eminently

rational" for Congress to conclude that correction of a problem that had emerged under the then-

existing ERISA, the encouragement of employer withdrawals from multiemployer plans, would

be "more fully effectuated" if the withdrawal liability provision contained in the amendment

were imposed retroactively. Id. at 730. As the Supreme Court stated, "Congress was properly

concerned that employers would have an even greater incentive to withdraw if they knew that

legislation to impose more burdensome liability on withdrawing employers was being

considered." Id. at 730-31.

The Court of Appeals applied the test articulated in Turner Elkhorn and Pension Benefit

in rejecting a due process retroactivity challenge to a statute imposing a portion of the costs of

decontaminating government-operated uranium enrichment facilities on electric utilities who

operated nuclear power plants.  Commonwealth Edison Co. v. United States, 271 F.3d 1327,

1338-57 (Fed. Cir. 2001) (en banc).  The Court of Appeals viewed the statute, which burdened a

utility with a portion of decontamination costs based on the utility's consumption of enriched

uranium over a long period prior to enactment, as "severely retroactive and costly."  Id. at

1345-46.  Considering the length of the retroactivity period and the extent of the burden to be

appropriate factors in its analysis, the Court of Appeals still found the retroactivity of the statute

to be rational, concluding that a utility subjected to the obligation to pay compensation for acts

prior to enactment "benefited from activity that contributed to a societal problem," that the

"liability is not disproportionately imposed on that party," and that "imposition of retroactive

liability would not be contrary that party's reasonable expectations."  Id. at 1346.

As a threshold consideration, we consider it relevant to our analysis that the CDSOA,

even though retroactive with respect to an extended period of time, does not directly "burden" a

domestic producer such as NHBB, who, long prior to enactment, decided not to support a certain

antidumping petition.  A domestic producer failing to qualify as an ADP because of its past

decision not to support a petition does not incur a direct cost or a regulatory burden as a result of

the CDSOA.  Still, the CDSOA can be described generally, in terms the Supreme Court used in

Turner Elkhorn, as a statute that adjusts "rights and burdens" of "economic life" and "upsets

otherwise settled expectations."  428 U.S. at 15-16 (citations omitted).  When NHBB and

similarly situated domestic bearing producers decided not to support the petition, they

presumably had expectations as to the consequences of their decisions that were grounded in then-existing antidumping law.  Yet, upon enactment of the CDSOA in 2000, they were placed at a competitive disadvantage by the CDSOA's retrospective reach in being denied distributions that directly benefit their domestic competitors, i.e., the domestic producers who supported the petition.  Plaintiff understandably objects that the CDSOA unexpectedly attached an adverse consequence (albeit not a direct monetary or regulatory burden) to a choice it made long before enactment of the statute.  (See Pl.'s Mem. in Opp. to Defs' Mots. to Dismiss and Def.-Int.'s Mot. for J. on the Pleadings ("Pl.'s Resp.") 6.)

     Nevertheless, as stated in Turner Elkhorn, 428 U.S. at 16, "legislation readjusting rights and burdens is not unlawful solely because it upsets otherwise settled expectations."  Plaintiff cannot meet the burden of showing that Congress acted arbitrarily and without a rational legislative purpose in retroactively applying the petition support requirement in the CDSOA. When viewed in the context of how Congress, in enacting the CDSOA, treated the competing economic interests of those who supported past petitions and those who did not, that objection falls short of showing "that the legislature has acted in an arbitrary and irrational way."  Id. at 15.

     The Court of Appeals previously concluded that "the purpose of the Byrd Amendment's limitation of eligible recipients was to reward injured parties who assisted government enforcement of the antidumping laws by initiating or supporting antidumping proceedings," SKF USA II, 556 F.3d at 1352, and that "the Byrd Amendment is rationally related to the government's legitimate purpose of rewarding parties who promote the government's policy against dumping," id. at 1360.  SKF USA II, which involved a challenge to the CDSOA on First Amendment and equal protection grounds, did not address separately the issue of retroactivity,

even though the CDSOA was applied retroactively in that case.  See id., 556 F.3d at 1342-43

(describing SKF's pre-enactment opposition to the 1988 petition).  Because Plaintiff specifically

attacks the CDSOA on due process retroactivity grounds, we consider whether "the retroactive

application of the legislation is itself justified by a rational legislative purpose."  Pension Benefit,

467 U.S. at 730.  We conclude that it is.

　　　　It was not arbitrary or irrational for Congress to conclude that the legislative purpose of

rewarding domestic producers who supported antidumping petitions, i.e., the very legislative

purpose the Court of Appeals recognized, would be "more fully effectuated" if the petition

support requirement were applied both prospectively and retroactively.  See Pension Benefit, 467

U.S. at 730-31.  By doing so, Congress provided monetary rewards, in the form of reimbursed

expenses, not only to domestic producers expressing support for petitions in future antidumping

investigations but also to those domestic producers who supported past antidumping petitions

that ripened into antidumping duty orders and who continue to produce goods competing with

imported merchandise subject to those orders.  By applying the CDSOA to the approximately

350 antidumping and countervailing duty orders in effect before CDSOA enactment, rather than

only to those orders issued afterwards, Congress provided a reward mechanism that was

considerably more comprehensive than one based only on a prospective scheme.  See SKF

USA II at 1350 n.21 (citing Huaiyin Foreign Trade Corp. (30) v. United States, 322 F.3d 1369,

1380 (Fed.Cir. 2003) ("noting that under the Byrd Amendment antidumping duties 'bear less

resemblance to a fine payable to the government, and look more like compensation to victims of

anticompetitive behaviors.'").

The court concludes that the retroactive reach of the petition support requirement in the CDSOA is justified by a rational legislative purpose and therefore is not vulnerable to attack on constitutional due process grounds.  In light of this conclusion, we are unable to agree with the argument that Plaintiff's due process retroactivity claim raises "novel questions that should not be resolved on the basis of a motion to dismiss or for judgment on the pleadings."  (Pl.'s Resp. 9).  We conclude that no relief can be granted on this claim, which the court will dismiss.

### III.   Defendants' Actions Were Not Unlawful Under the APA

Plaintiff claims that the actions of the ITC, which refused to include NHBB on the list of affected domestic producers, and of CBP, which refused to pay CDSOA distributions to NHBB, must be set aside as unlawful under the APA.  (First Am. Compl. ¶¶ 29-31).  Plaintiff argues that "by treating similarly situated domestic producers differently, Defendants act[ed] in a manner that is arbitrary, capricious, an abuse of agency discretion, not supported by substantial evidence, and contrary to law." (Id.).

Plaintiff's complaint alleges no facts from which we could conclude that the ITC acted inconsistently with the CDSOA in denying NHBB status as an affected domestic producer or that CBP unlawfully refused to pay CDSOA distributions to NHBB.  Instead, the complaint admits facts from which the court must conclude that it would have been unlawful for these agencies to have done otherwise in their administration of the CDSOA.  Plaintiff states that it "participated in the underlying ITC investigation from the outset" (Id. ¶ 8), but this allegation does not satisfy the petition support requirement in the CDSOA.  Plaintiff candidly acknowledges that "because NHBB did not support the petition, NHBB was not on the list of affected domestic producers" and recognizes that the ITC refused to add NHBB to the list of ADPs "because there is no

evidence [i]n the record of the original investigations that [NHBB] supported the petition."  (Id.

¶¶ 16, 18).  Under these facts, the CDSOA required that Plaintiff be treated differently than

domestic producers that supported the petition.

      Thus, Plaintiff's APA claim is premised on an incorrect CDSOA construction under

which a domestic producer who did not express support for the petition still could qualify for

ADP status.  Acceptance of Plaintiff's construction erroneously would equate participation in an

ITC investigation with support for an antidumping petition.  Because of this error of law, and in

the absence of any factual allegation from which we otherwise could conclude that either

agency's actions were violative of the APA, we conclude that Plaintiff's APA claim must be

dismissed.  As to this claim, the complaint does not "contain sufficient factual matter, accepted

as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct.

1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

**CONCLUSION**

      The First Amended Complaint fails to state a claim upon which relief can be granted.

Plaintiff already has taken the opportunity to amend its original complaint.  Judgment dismissing

this action shall be entered accordingly.

                              /s/ Gregory W. Carman
                              Gregory W. Carman, Judge

Dated: January 3, 2012
       New York, New York

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **NEW HAMPSHIRE BALL BEARING, INC.,**<br><br>Plaintiff,<br><br>v.<br><br>**UNITED STATES**, **UNITED STATES CUSTOMS AND BORDER PROTECTION,** and **UNITED STATES INTERNATIONAL TRADE COMMISSION,**<br><br>Defendants,<br><br>and<br><br>**THE TIMKEN COMPANY and MPB CORPORATION,**<br><br>Defendant-Intervenors. | **Before:  Gregory W. Carman, Judge**<br>**Timothy C. Stanceu, Judge**<br>**Leo M. Gordon, Judge**<br><br>**Court No. 08-00398** |

## JUDGMENT

Upon consideration of the First Amended Complaint, the motion for judgment on the pleadings filed by Defendant-Intervenors, the motions to dismiss filed by U.S. Customs and Border Protection and the U.S. International Trade Commission, and all other papers and proceedings herein, and in conformity with the court's Opinion issued on this date, it is hereby

**ORDERED** that Defendants' motions to dismiss and Defendant-Intervenors' motion for judgment on the pleadings be, and hereby are, GRANTED; and it is further

**ORDERED** that this action be, and hereby is, DISMISSED.

 /s/ Gregory W. Carman
Gregory W. Carman
Judge

Dated: January 3, 2012
New York, New York